NO. 07-08-00523-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 24, 2010

ALBERT MARTINEZ, JR., APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-408,839; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Albert Martinez, Jr., appeals his conviction for the offense of capital murder and sentence of life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

Background

On October 26, 1996, Eva Garcia was murdered and her battered and naked body was left behind a row of bushes next to a Lubbock church. Police were called to the scene by the pastor of the church after he discovered the body on the morning of

October 27.  Officer Bruce Short, one of the investigating police officers, opined that Garcia had struggled against her assailant and that it appeared that her clothes had been forcibly removed.  Short further opined that it appeared that Garcia had been strangled and had received multiple blunt force trauma injuries.  The police recovered multiple items from the scene that were submitted to the Department of Public Safety Crime Laboratory in Lubbock for analysis and testing.  None of the analysis and testing provided the police any leads and, in fact, excluded the only suspects.  As a result, the case became a "cold case."

Two days after the discovery of the body, a blood stain was discovered on the wall of the church some distance away from where the body had been located.  A swab was taken of this blood stain and it was submitted for testing.  The results of the testing excluded Garcia as the source of the blood.  In December of 2003, the swab of blood taken from the church wall was retested and the results of that testing was entered into the Combined DNA Index System (CODIS), a national database that stores known DNA profiles to generate leads in unsolved cases.  In 2004, the Lubbock Police Department was notified by CODIS that the DNA found in the blood swab had been matched to an individual within the database.  According to a CODIS report, the DNA found in the blood swab matched appellant's DNA.  The Lubbock Police Department obtained a blood sample from appellant and compared it to the blood swab obtained from the location of Garcia's body.  The result of this comparison was that appellant could not be excluded as the contributor of the blood found at the location where Garcia's body was discovered and that the probability of selecting a random Hispanic person that could be the source of the blood stain would be 26.44 quadrillion to one.

2

As a result of the genetic matching of appellant to the blood stain found at the scene of the crime, appellant became the primary suspect in the murder of Garcia. Appellant was taken into custody while the case was investigated. As part of the investigation, appellant was interviewed by Detective Martinez four times over the course of a week. During these interviews, appellant gave statements to Martinez in which appellant accepted responsibility "for what happened to" Garcia and admitted to beating a woman on October 26. Further, while in custody, appellant made phone calls in which he admitted his involvement in the murder of Garcia, but stated that he did not act alone. In one of these calls, appellant stated that "I was there when they were hitting her and the fucking, you know? but I wasn't the only one, you hear me?"[1]

Appellant was tried for the offense of capital murder. Following the trial, the jury returned a verdict finding appellant guilty of capital murder, as charged in the indictment. Following the jury verdict, the trial court sentenced appellant to a capital life sentence in the Institutional Division of the Texas Department of Criminal Justice. Appellant timely filed notice of appeal of the conviction and sentence.

By three issues, appellant challenges the trial court's Judgment of Conviction by Jury. By his first issue, appellant contends that the trial court violated appellant's Sixth Amendment right to confront and cross-examine witnesses against him when it allowed Dr. Thomas Beaver to testify from an autopsy report prepared by another doctor. By his

---

[1] Appellant's phone conversation alternated between English and Spanish and the quoted statement was made in Spanish. However, at trial, the State had the conversations translated and transcribed and the transcription of these calls were offered as demonstrative evidence to aid those jury members that do not understand Spanish. Appellant stated that he had no objection to these transcriptions.

second and third issues, appellant contends that the evidence was legally and factually insufficient to support the jury's verdict that appellant committed murder during the course of committing or attempting to commit aggravated sexual assault. We will address appellant's sufficiency challenges first.

## Sufficiency of the Evidence

By his second and third issues, appellant challenges both the legal and factual sufficiency of the evidence, specifically as it relates to the sufficiency of the evidence to support the finding that he committed murder during the course of committing or attempting to commit aggravated sexual assault. When both legal and factual sufficiency is challenged, we are required to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

### Standard of Review

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). In conducting a legal sufficiency review, it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict.

4

Clayton, 235 S.W.3d at 778. An appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

To prove appellant guilty of the indicted offense, the State had to prove: 1) appellant, 2) intentionally, 3) caused the death of Garcia, 4) while in the course of committing or attempting to commit the offense of aggravated sexual assault of Garcia. TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2009). As applicable to the case before us, a person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of another by any

means, without that person's consent.  Id. § 22.021(a)(1)(A)(i).  In a capital murder case, the intent to commit aggravated sexual assault must be formed prior to or concurrent with the murder.  See Herrin v. State, 125 S.W.3d 436, 441 (Tex.Crim.App. 2002).

Legal Sufficiency

Appellant contends that the State failed to present legally sufficient evidence to establish that he murdered Garcia during the course of committing or attempting to commit aggravated sexual assault.  However, evidence was presented to the jury that Garcia's clothes had been forcibly ripped from her body and her body was found naked.  Further, Garcia's body was found with abrasions, lacerations, and contusions in the external genitalia as well as a severe laceration in her vagina.  Finally, the jury heard appellant's phone conversation in which he stated, "I was there when they were hitting her and the fucking, you know?  but I wasn't the only one, you hear me?"  From this evidence, viewed in the light most favorable to the verdict, we cannot say that the jury acted irrationally in finding appellant guilty of capital murder beyond a reasonable doubt. See Jackson, 443 U.S. at 319; Clayton, 235 S.W.3d at 778.

Factual Sufficiency

Because we find the evidence to be legally sufficient, we must next review the evidence in a neutral manner to determine whether the jury was rationally justified in finding appellant guilty beyond a reasonable doubt.  Watson, 204 S.W.3d at 415.  When conducting a factual sufficiency review, we must remain mindful that the jury has

6

already passed on the evidence and their conclusions are entitled to deference when supported by the evidence. Id. at 417. Further, we cannot supplant the jury's verdict simply because we might disagree, rather we must be able to state with particularity where the deficiency in the evidence to support the jury's determination exists. Id.

Appellant contends that there is a "complete lack of forensic evidence demonstrating a sexual assault occurred." Appellant points to the fact that the laceration of Garcia's vagina was established to have occurred postmortem and contends that this is the only evidence of penetration of Garcia's sexual organ.

While appellant's characterization of the evidence is correct, his contention that this makes the evidence factually insufficient is in error. It is sufficient to find that appellant committed capital murder if the evidence supports that appellant murdered Garcia while attempting to commit aggravated sexual assault. See TEX. PENAL CODE ANN. § 19.03(a)(2). As such, the State was not required to prove that appellant actually committed aggravated sexual assault on Garcia. The evidence that Garcia's clothes had been forcibly removed, the antemortem injuries to Garcia's genitals, and appellant's statement that he was present during the "fucking" of Garcia[2] is sufficient evidence to

---

[2] Appellant contends that the context of the use of the word that was translated to "fucking" makes it apparent that appellant was referring to beating Garcia and not to sexual activity. However, appellant raised no objection to the use of the translation as a demonstrative aid in the trial court and, in cross-examination of the translator, presented evidence to the jury that the word used by appellant could be translated as a sexual act, messing around, or messing someone up. However, the jury was tasked with determining the facts, specifically what was the proper translation, and the weight that should be afforded to this evidence. See TEX. CODE CRIM. PROC. ANN. arts. 36.13, 38.04 (Vernon 2007); Lancon v. State, 253 S.W.3d 699, 705 (Tex.Crim.App. 2008). We must defer to the jury's determination.

allow a rational jury to conclude that appellant murdered Garcia while attempting to commit aggravated sexual assault.

Accordingly, we find that the evidence to support appellant's conviction for the offense of capital murder was both legally and factually sufficient. Therefore, we overrule appellant's second and third issues.

## Confrontation

By his first issue, appellant contends that his Sixth Amendment right to confront the witnesses against him was violated by the admission of testimonial hearsay evidence, specifically information contained in the report from the autopsy on Garcia's body. The medical examiner who conducted the autopsy, Dr. Randy Frost, did not testify. Instead, the State called the chief medical examiner for Lubbock County, Dr. Thomas R. Beaver, who was not present at the autopsy, to testify regarding the examination of the body and to give his opinions regarding Garcia's injuries and the cause of her death. Appellant contends that he was denied his constitutional right to confront Frost and challenge his findings and conclusions contained in his autopsy report.

Standard of Review

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The confrontation right also applies to out-of-court statements that are testimonial in nature. Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158

8

L.Ed.2d 177 (2004). The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. Id. at 68. Whether a particular out-of-court statement is testimonial is a question of law. De La Paz v. State, 273 S.W.3d 671, 680 (Tex.Crim.App. 2008). Generally speaking, a hearsay statement is testimonial when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution. Id. Error in admitting evidence in violation of a defendant's confrontation right is constitutional error, which necessitates reversal unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. See TEX. R. APP. P. 44.2(a); Wood v. State, 299 S.W.3d 200, 214 (Tex.App.—Austin 2009, pet. filed).

The Autopsy Report

Appellant contends that the contents and results of Frost's autopsy report were testimonial out-of-court statements that, as such, are subject to the Confrontation Clause of the Sixth Amendment. Appellant contends that the admissibility of statements contained in Frost's autopsy report depends on an evaluation of the reasons the declarant made the statements. If these statements were made in anticipation for use in a later criminal trial, they are testimonial and subject to appellant's confrontation right. Appellant relies on Melendez-Diaz v. Massachusetts, 2009 U.S. LEXIS 4734, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), to support his argument.

9

The State contends that the recent Wood decision of the Austin Court of Appeals was wrongly decided and should not be followed by this Court. The court, in Wood, construes Melendez-Diaz in much the same way that appellant does in this appeal[3] and concludes that the autopsy report involved in that case was testimonial hearsay subject to the Confrontation Clause of the Sixth Amendment. See Wood, 299 S.W.3d at 209-10. The State argues that Wood overlooked a distinction drawn in Melendez-Diaz, 2009 U.S. LEXIS 4734, at *27-*28, between business records created as a regular part of a business's activity and business records created for use in the courts. In making its argument, the State relies upon the statutory requirement that a medical examiner conduct an inquest whenever there is an unexplained death, regardless of whether there is suspicion that a crime has occurred. See TEX. CODE CRIM. PROC. ANN. art. 49.25, § 6(a).

The Austin Court of Appeals acknowledged that a medical examiner is statutorily required to conduct an inquest whenever the cause of a person's death is unknown. Wood, 299 S.W.3d at 209. However, the court also noted that the statute specifically requires the medical examiner to perform an autopsy when a person dies under circumstances warranting the suspicion that death was caused by unlawful means. Id. (citing TEX. CODE CRIM. PROC. ANN. art. 49.25, § 6(a)(4)). If the cause of death is determined beyond a reasonable doubt, the medical examiner must file a report stating the cause of death with the district, criminal district, or county attorney. Id. (citing TEX. CODE CRIM. PROC. ANN. art. 49.25, § 9(a)). Further, an autopsy must be performed if

_____

[3] Appellant's brief does not directly address the Wood decision. Appellant's brief was filed with this Court on August 25, 2009, while the Wood decision was issued on October 7, 2009. Appellant did not file a reply brief.

10

requested by the district, criminal district, or county attorney. Id. Because the statutory prerequisites giving rise to the medical examiner's duty to perform an autopsy varies greatly, the Austin court expressly stated that, "We do not hold that all autopsy reports are categorically testimonial." Id. The court then analyzed the facts of that case and held that, because the circumstances surrounding the victim's death warranted the police in the suspicion that his death was a homicide, the police evidence specialist attended the autopsy, and it was a reasonable assumption that the medical examiner performing the autopsy understood that the report containing her findings and conclusions would be used prosecutorially, the autopsy report was a testimonial statement and the medical examiner performing the autopsy was a witness against the defendant within the meaning of the Confrontation Clause. Id. at 209-10.

We agree with the analysis of our sister court in Wood. That the medical examiner may be required to perform an autopsy on a body when there is no suspicion that the death was tied to criminal activity does not justify this Court abdicating its duty to determine whether the primary purpose of the autopsy report was to establish or prove past events potentially relevant to later criminal prosecution. See De La Paz, 273 S.W.3d at 680. In the present case, the circumstances surrounding Garcia's death warranted the police to suspect that Garcia had been killed, an officer attended the autopsy and took photographs of the body, and it was reasonable for Frost to have assumed that his autopsy report would be used prosecutorially. Since the statutory basis giving rise to Frost's duty to perform the autopsy was that the circumstances surrounding Garcia's death warranted the suspicion that the death was caused by unlawful means, see TEX. CODE CRIM. PROC. ANN. art. 49.25, § 6(a)(4), we hold that

Frost's autopsy report was a testimonial statement and that Frost was a witness within the meaning of the Confrontation Clause of the Sixth Amendment.

Beaver's Testimony

However, while we have found Frost's autopsy report to be testimonial, the autopsy report was not admitted into evidence in appellant's trial. Rather, Beaver testified to his own opinions regarding Garcia's injuries and death and was, of course, subject to cross-examination by appellant. Beaver did, however, testify that he relied on the contents of the autopsy report as a basis for his opinions.

After Beaver introduced himself and briefly summarized his education and experience, the prosecutor asked him if he could read Frost's autopsy report and view the photographs and substantiate the findings made by Frost. Appellant indicated that he had an objection and requested a conference at the bench. At the bench conference, appellant stated, "we would object to this witness testifying as to the autopsy report. Initially its hearsay, but we're also in violation of confrontation clause under Crawford versus Washington, Your Honor." The trial court overruled appellant's objection without further discussion.[4] While this objection was sufficient to preserve error in regard to the contents and conclusions contained in the autopsy report, it did not notify the trial court of any error in the admission of the photographs upon which Beaver based his testimony.

---

[4] The State concedes that this objection was sufficient to preserve error in the admission of any statements from the autopsy report. See Martinez v. State, 98 S.W.3d 189, 193 (Tex.Crim.App. 2003).

Reviewing Beaver's testimony, it is clear that the majority of his testimony was based on his review of the photographs taken during the autopsy. Based on these photos, Beaver opined that Garcia suffered extensive blunt force trauma injuries, but that she most likely died from asphyxia or, in other words, strangulation.

During Beaver's testimony, he was asked, on two separate occasions, about his opinion based on his review of the photographs and Frost's autopsy report.[5] Under Texas Rule of Evidence 703, an expert witness may base an opinion on facts or data that are not admissible in evidence, provided that the inadmissible facts or data are of a type reasonably relied upon by experts in the particular field. TEX. R. EVID. 703. The Confrontation Clause is not violated merely because an expert bases an opinion on inadmissible testimonial hearsay. Wood, 299 S.W.3d at 213. This is so because the testifying expert's opinion is not hearsay and the testifying expert is available for cross-examination regarding his opinion. Id. Because in these specific instances Beaver did not disclose the testimonial hearsay upon which his expert opinion was based, the jury only heard the direct, in-court testimony of Beaver and appellant's confrontation rights were not violated. See Id.

However, Beaver did disclose to the jury certain testimonial statements contained in the autopsy report. Texas Rule of Evidence 705(d) permits an expert to disclose inadmissible facts or data underlying his opinion, but only if the value of the inadmissible evidence disclosed is not outweighed by the danger that the inadmissible evidence will

---

[5] Specifically, Beaver was asked "And from your review of the autopsy report and the photographs taken in this case, do you believe that a thorough job was done and a correct job was done," and "But they [the photographs] were, in your opinion, necessary to explain the findings of Dr. Frost in his autopsy report."

13

be used for another, impermissible purpose. TEX. R. EVID. 705(d); <u>Wood</u>, 299 S.W.3d at 213. In the present case, the facts and data in the autopsy report explained and supported Beaver's opinions only if those facts and that data were deemed true. Thus, under the circumstances of this case, the disclosure of the out-of-court testimonial statements underlying Beaver's opinions, even if offered only for the purpose of explaining and supporting those opinions, constituted the use of testimonial statements to prove the truth of the matters asserted in violation of the Confrontation Clause. <u>Wood</u>, 299 S.W.3d at 213.

<u>Harm Analysis</u>

Having found that portions of Beaver's testimony violated appellant's confrontation rights, we must analyze the erroneously admitted evidence to determine if it was harmful to appellant. Because the error was constitutional error, we must reverse appellant's conviction unless we are satisfied beyond a reasonable doubt that the error did not contribute to the conviction or punishment. <u>See</u> TEX. R. APP. P. 44.2(a); <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); <u>Langham v. State</u>, No. PD-1780-08, 2010 Tex.Crim.App. LEXIS 21, at *34-*35 (Tex.Crim.App. March 3, 2010). In determining whether constitutional error under <u>Crawford</u> may be declared harmless beyond a reasonable doubt . . . the following factors are relevant: 1) how important was the out-of-court statement to the State's case; 2) whether the out-of-court statement was cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the prosecution's case.

14

<u>Langham</u>, 2010 Tex.Crim.App. LEXIS 21, at *35 (quoting <u>Scott v. State</u>, 227 S.W.3d 670, 690-91 (Tex.Crim.App. 2007)). Appellant contends that Beaver's use of inadmissible testimonial hearsay harmed him because it was used to establish the manner and means of Garcia's death, it was used to prove that appellant was guilty of murder rather than aggravated assault, and failure to reverse appellant's conviction could encourage the State to repeat the violation of the Confrontation Clause found in this case.

None of appellant's contentions are persuasive. As to the cause of death, Beaver testified that it was his opinion, based on the photographs, that Garcia had been choked, the choking had caused numerous abrasions to Garcia's neck as the assailant's hands shifted on her neck, and Garcia died from ". . . some sort of strangulation, some sort of asphyxia death." None of this testimony was in violation of the Confrontation Clause because it constituted the opinions of the expert witness that was on the stand and subject to cross-examination. <u>See</u> <u>Wood</u>, 299 S.W.3d at 213. Thus, while it is true that Beaver informed the jury that Frost had found the cause of Garcia's death to be asphyxiation, Frost's opinion is cumulative of other, properly admitted evidence and, as such, is harmless beyond a reasonable doubt. <u>See</u> <u>Langham</u>, 2010 Tex.Crim.App. LEXIS 21, at *35. As to appellant's contention that Frost's testimonial hearsay was used to establish that appellant was guilty of murder rather than aggravated assault, appellant relies on a confessional statement that he made in which he stated that Garcia was alive when he left the scene of the crime. However, Beaver testified that neither he nor Frost were able to determine a time of death. Nothing in Beaver's testimony refuted appellant's defensive theory that he was

15

guilty of only aggravated assault. As a result, we conclude that the jury must have found appellant guilty of capital murder based on other evidence. Finally, appellant contends that the failure to reverse appellant's conviction could have the effect of encouraging the State to repeat the error found in this case by using sponsoring witnesses in lieu of the actual medical examiner that performed the autopsy. However, the potential of future abuses by the State is not demonstrated by appellant's analysis to have caused harm in this case.

Looking specifically to those statements from Frost's autopsy report that were admitted into evidence through Beaver's testimony, we conclude that the error was harmless. Beaver identified that Frost concluded that the cause of Garcia's death was asphyxiation. However, as discussed above, Frost's conclusion regarding cause of death was cumulative of Beaver's opinion and of the photographs that showed extensive injuries to Garcia's neck consistent with strangulation. Additionally, we note that the indictment of appellant indicated that the cause of Garcia's death was either strangulation or blunt force trauma. All of the evidence presented regarding the injuries suffered by Garcia were consistent with either strangulation or blunt force trauma. Beaver also testified regarding the livor findings made by Frost. Initially, we note that this testimony was elicited by appellant during cross-examination. Further, the testimony regarding the livor found in Garcia's body was never tied to anything that would make this testimony relevant to the issue of whether appellant was guilty of murder. The only testimonial hearsay evidence that was admitted that was not cumulative or irrelevant actually favored appellant. Beaver testified that Frost's report found that Garcia's blood-alcohol level was at a .20 and that Garcia had pharmaceutical

narcotics in her urine. While Beaver opined that these findings did not contribute to Garcia's death, the evidence that Garcia was intoxicated was potentially exculpatory in that it might have suggested that Garcia died as a result of an accident.

Looking to the factors that we must consider in determining whether error in this case may be declared harmless beyond a reasonable doubt, the disclosure of Frost's conclusion regarding the cause of Garcia's death was cumulative of other evidence that was properly presented to the jury and, as such, was not of great import to the State's case. Further, significant evidence was admitted that would corroborate that appellant murdered Garcia by strangulation or blunt force trauma and the State's case against appellant, even without considering the inadmissible testimony regarding Frost's opinions, was strong. See Langham, 2010 Tex.Crim.App. LEXIS 21, at *35. While the admission of the testimonial hearsay from Frost's autopsy report violated the Confrontation Clause, we are satisfied beyond a reasonable doubt that the disclosure of this information did not contribute to appellant's conviction or punishment. See TEX. R. APP. P. 44.2(a); Wood, 299 S.W.3d at 215.

For the foregoing reasons, appellant's first issue is overruled.

Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Publish.

17