NO. 07-09-00335-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



AUGUST
26, 2011

 



 

DANIEL HERRERA, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 110TH DISTRICT COURT OF FLOYD
COUNTY;

 

NO. 4366; HONORABLE WILLIAM P. SMITH, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

 

Over his plea of not guilty, a jury
convicted appellant Daniel Herrera of murder. 
Through one issue, he contends the trial court abused its discretion by
admitting the autopsy report and supporting oral testimony over his
objection.  We agree the evidence should
not have been admitted but find the error harmless, and affirm the judgment of
the trial court.

 

 

Background

The murder indictment contained a paragraph
alleging appellant intentionally or knowingly caused the death of Israel
Martinez, by shooting him with a firearm.[1]  It also contained a paragraph alleging he, with
intent to cause serious bodily injury to Martinez, committed an act clearly
dangerous to human life by shooting Martinez with a firearm, causing Martinez’s
death.[2]  The court’s charge allowed the jury to find
appellant guilty under either theory. 
The jury found him guilty under the second paragraph, and assessed
punishment at imprisonment for a term of thirty-four years.

Because
appellant does not challenge the
sufficiency of the evidence supporting his conviction, we will recite only so
much of the evidence as is necessary to an understanding of the issue presented.  The evidence showed that after a
confrontation with Martinez and another man over a drug transaction in
Floydada, Floyd County, appellant obtained a 9mm handgun and returned to the
location of the confrontation.  Again
confronting the two, appellant fired his gun several times.  Martinez was shot and killed, the other man
wounded.  

Dr. Thomas Beaver performed the
autopsy on Martinez.  At trial, a justice
of the peace who was present during the autopsy identified Dr. Beaver’s written
autopsy report, and it was admitted into evidence as a public record, over
appellant’s objection.  The justice of
the peace also identified two photographs taken at the autopsy, one of which
showed an entry gunshot wound on Martinez’s upper arm.  The photographs were admitted without
objection. 

Dr. Beaver did not testify because he
was working in California by the time of trial. 
Another pathologist, Dr. Thomas Parsons, testified briefly.[3]
Based on his review of Dr. Beaver’s report, he expressed the opinion Martinez
died from a gunshot wound. Appellant objected to the admission of the autopsy
report and the related testimony because Dr. Beaver was not called to
testify.  Citing Crawford v. Washington[4] and Melendez-Diaz
v. Massachusetts,[5]
appellant argued the autopsy report was testimonial in nature and its admission
would deny him the right to confront Dr. Beaver, the physician who conducted
the autopsy.  The trial court accepted
the State’s contention the report was admissible.  Appellant then requested and received a running
objection to the autopsy report and Dr. Parsons’ related testimony.  It is the admission of the autopsy report and
testimony, over objection, of which appellant now complains.

Analysis

We review a trial court's
admission of evidence for an abuse of discretion. Ramos v. State, 245
S.W.3d 410, 417-18 (Tex.Crim. App. 2008). The ruling will be upheld if it is reasonably
supported by the record and is correct under any applicable legal theory. Id. at 418. We give almost total
deference to a trial court's determination of historical facts and review de
novo the trial court's application of the law to those facts. Carmouche v. State, 10
S.W.3d 323, 327 (Tex.Crim.App. 2000).  See
also Wall v. State, 184
S.W.3d 730, 742-43 (Tex.Crim.App. 2006) (applying hybrid standard of review to Crawford
issue); Mason v. State, 225
S.W.3d 902, 907 (Tex.App.--Dallas 2007, pet. ref'd) (same).  Error in admitting evidence in violation of a
defendant’s confrontation right is constitutional error, which necessitates
reversal unless the reviewing court determines beyond a reasonable doubt that the
error did not contribute to the conviction or punishment.  See Tex.
R. App. P. 44.2(a); Wood v. State, 299 S.W.3d 200, 214
(Tex.App.—Austin 2009, pet. ref’d).  

In Crawford, the Supreme Court held the Sixth Amendment confrontation right
applies not only to in-court testimony, but also to out-of-court statements
that are testimonial in nature.  Wood v. State, 299 S.W.3d at 207, citing Crawford, 541
U.S. at 51.
The Confrontation Clause forbids the admission of testimonial
hearsay unless the declarant is unavailable to testify and the defendant had a
prior opportunity to cross-examine the declarant. Id. Whether a particular
out-of-court statement is testimonial is a question of law. De La Paz v. State, 273
S.W.3d 671, 680 (Tex.Crim.App. 2008). It is the State's burden to establish the
admissibility of the testimony it seeks to introduce at trial. Id. 

In Texas, a medical examiner is
required to conduct an investigation when a person dies under circumstances
warranting the suspicion that unlawful means caused the death.  Tex. Code Crim. Proc. Ann. art. 49.25, §
6(a)(4) (West 2010).  If the medical
examiner’s investigation leads the examiner to determine the cause of death
beyond a reasonable doubt, then the medical examiner must file a report stating
the cause of death with the district, criminal district or county
attorney.  Id. § 9(a).  

In Melendez-Diaz,
the Supreme Court held that reports prepared by analysts at the state crime
laboratory stating that a substance was cocaine were testimonial statements,
and that the analysts who prepared the reports were witnesses for purposes of
the Sixth Amendment. Melendez-Diaz v. Massachusetts, __ U.S. __, 129 S. Ct. 2527, 174 L.Ed.2d 314 (2009). The reports were created
specifically as evidence in a criminal proceeding.  Id.;
Bullcoming v. New Mexico,  ___ U.S.
___, __ S.Ct.___, 2011 U.S. LEXIS 4790, at *8 (2011).  The Supreme Court
observed that confrontation of the analyst was necessary to
permit defendants to expose analysts who may be incompetent or even
dishonest.  Melendez-Diaz, 129 S.Ct. at
2536-37.   Moreover, "the prospect
of confrontation will deter fraudulent analysis in the first place." Id. at 2537.   Absent a showing
that the analysts were unavailable to testify and that the defendant had a
prior opportunity to cross-examine them, the defendant was entitled to be
confronted with the analysts at trial.  Bullcoming, __ U.S. ___, __ S.Ct. ___,
2011 U.S. LEXIS 4790 at * 9-10. 

Under Melendez-Diaz, a statement made for prosecutorial
use is testimonial even if the statement does not directly accuse the defendant
of wrongdoing, does not describe the crime or any human action related to it,
or describes the results of neutral scientific testing. Grey v. State, 299 S.W.3d 902, 909-10 (Tex.App.—Austin 2009, pet.
ref’d). After the issuance of the opinion in Melendez-Diaz, Texas courts have rejected arguments that autopsy
reports are not testimonial because they  contain "sterile
recitations" of "objective facts," are "routine, descriptive,
and nonanalytical," and "[do] not relate subjective narratives
pertaining to [the defendant's] guilt or innocence.”  Id.,
citing Wood, 299 S.W.3d at 208.[6]  An autopsy report is testimonial if the
medical examiner would reasonably expect the statements in the report to be
used prosecutorially. Gilstrap v. State,
No. 04-09-00609-CR, 2011 Tex.App. LEXIS 181, at *4-5 (Tex.App.—San Antonio Jan.
12, 2011, pet. ref’d), citing Melendez-Diaz, __U.S.___, 129 S. Ct. 2527, 2531, 174 L. Ed. 2d 314.  

The victim here had a
gunshot wound that, given the location of the wound, did not appear to be
self-inflicted, making it reasonable for a medical examiner to expect any
statements or reports made would be used in a criminal prosecution.  See
Martinez v. State, 311 S.W.3d 104, 110-11 (Tex.App.—Amarillo 2010, pet.
ref’d) (finding under circumstances described it was reasonable to assume
autopsy report would be used prosecutorially). 
The autopsy report here thus fell within the “core class of testimonial
statements” as described in the Supreme Court’s recent Confrontation Clause
decisions.  Crawford, 541 U.S. at 51-52. 
See also Melendez-Diaz, ___ U.S. at ___,
129 S. Ct. 2527 at
2532; Davis, 547 U.S. at  830.

Appellant's sole issue is
premised on the assertion that Dr. Beaver’s autopsy report and Dr. Parsons’
testimony based on the report was testimonial hearsay under Crawford.  We agree.

At trial, Dr. Parsons testified he reviewed Dr. Beaver’s autopsy
report.  Parsons opined the autopsy
appeared to have been conducted with proper protocol.  He described Martinez’s injuries in response
to the
prosecutor’s question, “And based on your review of the autopsy report, can you
tell us what injuries Mr. Martinez had?”[7]  Later, he responded positively to the
prosecutor’s question, “And from your review of the autopsy report, he died
from being shot by a firearm?” 

However, as we will later discuss, in
addition to this testimony based on the autopsy report, Dr. Parsons testified
that he personally examined photographs and x-rays
taken of Martinez’s body.  Photographs
taken during an autopsy are not testimonial hearsay.  Wood,
299 S.W.3d at 215; Gilstrap, 2011
Tex.App. LEXIS 181, at *5, fn. 2; accord
Tex. R. Evid. 801(a). 

 

When the State elected to introduce
Dr. Beaver’s autopsy report, Dr. Beaver became a witness appellant had the
right to confront.  See Bullcoming, __ U.S. ___, __ S.Ct. ___, 2011 U.S. LEXIS 4790 at * 9-10,
citing Melendez-Diaz, __ U.S.
at __, 129 S.Ct. at 2534. The jury had access to the report during its
deliberations.  Further, Dr. Parsons’ expressed
expert opinion of the cause of death was based solely on the autopsy
report.  His trial testimony was very
brief and he stated no other bases for his opinion.  We therefore find
that, under the circumstances here, the admission of the autopsy report and Dr.
Parsons’ testimony based on the report violated the Confrontation Clause.  See
Martinez, 311 S.W.3d at 112; Wood, 299 S.W.3d at 213.

Harm

Because the error was of
constitutional dimension, we must reverse the conviction unless we determine
beyond a reasonable doubt it did not contribute to appellant’s conviction. Tex. R. App. P. 44.2(a); Langham v. State, 305 S.W.3d 568, 582 (Tex.Crim.App.
2010); Davis v. State, 203
S.W.3d 845, 849-53 (Tex.Crim.App. 2006); Martinez,
311 S.W.3d at 104.  In determining whether constitutional
error under Crawford may be declared harmless beyond a
reasonable doubt, the following factors are relevant: (1) how important the
out-of-court statement was to the State's case; (2) whether the out-of-court
statement was cumulative of other evidence; (3) the presence or absence
of evidence corroborating or contradicting the out-of-court statement on
material points; and (4) the overall strength of the prosecution's case.  Langham, 305
S.W.3d at 582 (quoting Scott v. State,
227 S.W.3d 670, 690-91 (Tex.Crim.App. 2007)). 
In determining whether the error was actually a contributing factor in
the jury’s deliberations, we may also consider the “source and nature of the
error, to what extent, if any, it was emphasized by the State, and how weighty
the jury may have found the erroneously admitted evidence to be compared to the
balance of the evidence with respect to the element or defensive issue to which
it is relevant.  Langham, 305 S.W.3d at 582. 
In consideration of these factors, we must determine whether “there is a
reasonable possibility that the Crawford
error moved the jury from a state of non-persuasion to one of persuasion on a
particular issue.”  Id. Our harm analysis does not turn on whether, discounting the
erroneously admitted evidence, the remaining evidence was legally sufficient to
convict.  Instead, the question is whether, given the state of the record as a
whole, we can say, to a level of confidence beyond a reasonable doubt, the
erroneously admitted evidence did not contribute to the jury's verdict.  Scott,
227 S.W.3d at 694.

The Penal Code defines causation in
terms of a “but for” causal connection. 
Tex. Penal Code Ann. § 6.04(a) (West 2010) (person is criminally
responsible “if the result would not have occurred but for his conduct”);[8]
Robbins v. State, 717 S.W.3d 348, 351
(Tex.Crim.App. 1986); Grotti v. State,
209 S.W.3d 747, 758 (Tex.App.—Fort Worth 2006), aff’d 273 S.W.3d 273 (Tex.Crim.App. 2008).  Appellant was charged with murder under
section 19.02 of the Penal Code.  Tex.
Penal Code Ann. § 19.02 (West 2010). Under either of the theories alleged in
the indictment and contained in the charge, the State was required to prove
beyond a reasonable doubt that appellant’s conduct of shooting Martinez with a
firearm caused his death, that is, Martinez’s death would not have occurred but
for appellant’s act of shooting him.  

At first blush, the autopsy report
and Dr. Parsons’ testimony from it seem critical to the State’s case. Above Dr.
Beaver’s signature on the first page of the report is a paragraph labeled
“Opinion” that reads:  “CAUSE OF
DEATH:  Based upon the information
available to me at this time, it is my opinion that the cause of death is best
certified as Gunshot Wound to the Chest with the manner of death classified as
Homicide.”  The jury heard, however,
other evidence bearing on the cause of death. 
Considering the entire record, we are satisfied that admission of the
autopsy report itself and Dr. Parsons’ testimony reciting the report’s
findings, played little or no role in “moving the jury from a state of
non-persuasion to one of persuasion” on the issue of the cause of Martinez’s
death.

At this point in the analysis, it is
important to recall that the law recognizes circumstantial evidence to be as
probative as direct evidence to establish a vital fact.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).  The evidence of the cause of Martinez’s death
begins with appellant’s testimony of his confrontations with Martinez and the
other man during the night of Martinez’s death. 
From that evidence, the jury would have considered that Martinez was alive
and well when appellant, fearing he was in danger from Martinez and his
companion, began firing his 9mm pistol in their direction.

A paramedic testified that she
arrived on the scene very shortly after the shootings.  She first attended the other man, who was
bleeding from a gunshot wound in his buttocks. 
She then noticed Martinez, lying on the ground.  He was not responsive but she could find no
injuries.  She examined his head, neck
and chest, all without finding an injury. 
She could see no bleeding.  The
body was warm, and she tried to resuscitate Martinez using CPR, to no
avail.  Puzzled, she attached her
portable heart monitor to Martinez.  The
reading was “asystole, three straight lines on the monitor,” indicating
Martinez was dead.  It was only after
Martinez was loaded into an ambulance for the hospital, in the better light
inside the ambulance, that the paramedic removed his shirt and located a small
bullet wound in his left arm.  There was
a tiny spot of blood on his shirt at the point of the wound.  

As noted, while most questions relevant
to the cause of death Dr. Parsons was asked at trial were based merely on his
review of Dr. Beavers’ autopsy report, he also testified he reviewed
photographs and x-rays taken of the body, evidence that is non-testimonial in
nature. He told the jury the entrance wound was seen in a photograph, but that
the bullet’s path through the left lung was not photographed.  He said there “was a photograph of the injury
to the aorta.” He also said the recovered bullet was photographed, and that
“x-rays did show the injury or the . . . location of the bullet before the
dissection of the body occurred.”

And we cannot ignore in our analysis
the testimony of the justice of the peace. 
As noted, she identified the autopsy report and testified she ordered
the autopsy.  She also agreed that she
was present when the autopsy was performed, “during the entire autopsy.”  She identified the two photographs taken
during the autopsy that were admitted. 
One shows the bullet entry wound on Martinez’s upper left arm.  Finally, without objection, she responded to
the prosecutor’s question, “As a result of the autopsy, did you rule on a
manner of death?”  The justice of the
peace answered, “Yes.  Gunshot wound.”

While perhaps non-responsive,[9]
the answer told the jury what other evidence also made rather clear, that
Martinez’s death was caused by the round that passed through his left arm,
entered and traversed his lung, contacted his aorta and came to rest at the
location shown by the x-ray.

Appellant’s case, based as noted on
his claim of self-defense, neither challenged this evidence of the cause of
Martinez’s death nor suggested any other cause. 
He acknowledged he fired the 9mm firearm in the direction of
Martinez.  A ballistics expert testified
the cartridges recovered were consistent with a 9mm firearm. 

The cause of death was not a
contested issue at trial.  Having
reviewed the entire record, we conclude the autopsy report and Dr. Parsons’
testimony reiterating its findings were only marginally important to the
State's case; the autopsy report and Dr. Parsons’ testimony about it were cumulative
of other evidence; persuasive circumstantial and direct evidence corroborated
the improperly-admitted evidence and no evidence contradicted it; and both as
to the cause of death and as to the other elements of the charged offense, the
prosecution's case overall was strong.  Langham, 305 S.W.3d at 582.  The State did not mention either the autopsy
report or Dr. Parsons’ testimony in its closing argument.  

Accordingly, reviewing
the record as a whole, we find beyond a reasonable doubt that the erroneously
admitted autopsy report evidence did not contribute to the jury's verdict. Scott, 227 S.W.3d at 690-91. Davis, 203 S.W.3d at 854-55.  Finding the Crawford error here harmless, we overrule appellant’s issue and
affirm the judgment of the trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

 

Do not publish. 

 

 

            











[1] Tex. Penal Code Ann.
§ 19.02(b)(1) (West 2010). 

 





[2] Tex. Penal Code Ann.
§ 19.02(b)(2) (West 2010). 





[3]  Dr. Parsons’ direct testimony, including his description
of his training and experience and general descriptions of forensic pathology
and autopsies, occupies about six pages of the reporter’s record.

 





[4] Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158
L.Ed.2d 177 (2004). 

 





[5] Melendez-Diaz v. Massachusetts, __ U.S.__, 129 S.Ct.
2527, 174 L.Ed.2d 314 (2009). 

 





[6]  The Texas cases the State relied on at trial,
and cite on appeal, holding that an autopsy report is not testimonial, were
decided before the Supreme Court announced its opinion in Melendez-Diaz in 2009.  See Campos v. State, 256 S.W.3d 757, 762 (Tex.App.--Houston
[14th Dist.] 2008, pet. ref'd); Pierce v. State, 234 S.W.3d 265, 269 (Tex.App.--Waco
2007, pet. ref'd); Mitchell v. State, 191 S.W.3d 219, 222 (Tex.App.--San
Antonio 2005, pet. ref'd); Denoso v. State, 156 S.W.3d 166, 182 (Tex.App.--Corpus
Christi 2005, pet. ref'd). 





[7]  Dr. Parsons testified, “[t]he
decedent identified in the report as Israel Martinez suffered a gunshot wound,
which entered through the arm, perforated the left lung, the aorta, and was
lodged in the hilum of the right lung.” 
We note this testimony simply to indicate its consistency with other
evidence we later discuss.

 





[8]  Penal Code § 6.04(a) addresses also results caused by
concurrent causes.  No one, at trial or
on appeal, has suggested a concurrent cause for Martinez’s death.  There was evidence Martinez’s blood contained
alcohol, marijuana and cocaine.  No one
suggests, and we find no evidence, that Martinez’s ingestion of these
substances was a concurrent cause of his death.

 





[9]
“Manner of death” is not the same as “cause of
death.”  See Sanchez v. State, No. PD-0961-7, 2010 Tex. Crim. App. LEXIS
1242, at *22-24 (Tex.Crim.App. Oct. 6, 2010) (discussing “manner of death,”
“manner and means,” and “cause of death”).