NO. 07-09-00335-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

AUGUST 26, 2011

DANIEL HERRERA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 110TH DISTRICT COURT OF FLOYD COUNTY;

NO. 4366; HONORABLE WILLIAM P. SMITH, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Over his plea of not guilty, a jury convicted appellant Daniel Herrera of murder. Through one issue, he contends the trial court abused its discretion by admitting the autopsy report and supporting oral testimony over his objection. We agree the evidence should not have been admitted but find the error harmless, and affirm the judgment of the trial court.

## Background

The murder indictment contained a paragraph alleging appellant intentionally or knowingly caused the death of Israel Martinez, by shooting him with a firearm.[1] It also contained a paragraph alleging he, with intent to cause serious bodily injury to Martinez, committed an act clearly dangerous to human life by shooting Martinez with a firearm, causing Martinez's death.[2] The court's charge allowed the jury to find appellant guilty under either theory. The jury found him guilty under the second paragraph, and assessed punishment at imprisonment for a term of thirty-four years.

Because appellant does not challenge the sufficiency of the evidence supporting his conviction, we will recite only so much of the evidence as is necessary to an understanding of the issue presented. The evidence showed that after a confrontation with Martinez and another man over a drug transaction in Floydada, Floyd County, appellant obtained a 9mm handgun and returned to the location of the confrontation. Again confronting the two, appellant fired his gun several times. Martinez was shot and killed, the other man wounded.

Dr. Thomas Beaver performed the autopsy on Martinez. At trial, a justice of the peace who was present during the autopsy identified Dr. Beaver's written autopsy report, and it was admitted into evidence as a public record, over appellant's objection. The justice of the peace also identified two photographs taken at the autopsy, one of

---

[1] Tex. Penal Code Ann. § 19.02(b)(1) (West 2010).

[2] Tex. Penal Code Ann. § 19.02(b)(2) (West 2010).

which showed an entry gunshot wound on Martinez's upper arm. The photographs were admitted without objection.

Dr. Beaver did not testify because he was working in California by the time of trial. Another pathologist, Dr. Thomas Parsons, testified briefly.[3] Based on his review of Dr. Beaver's report, he expressed the opinion Martinez died from a gunshot wound. Appellant objected to the admission of the autopsy report and the related testimony because Dr. Beaver was not called to testify. Citing *Crawford v. Washington*[4] and *Melendez-Diaz v. Massachusetts,*[5] appellant argued the autopsy report was testimonial in nature and its admission would deny him the right to confront Dr. Beaver, the physician who conducted the autopsy. The trial court accepted the State's contention the report was admissible. Appellant then requested and received a running objection to the autopsy report and Dr. Parsons' related testimony. It is the admission of the autopsy report and testimony, over objection, of which appellant now complains.

Analysis

We review a trial court's admission of evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex.Crim. App. 2008). The ruling will be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *Id.*

---

[3] Dr. Parsons' direct testimony, including his description of his training and experience and general descriptions of forensic pathology and autopsies, occupies about six pages of the reporter's record.

[4] *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

[5] *Melendez-Diaz v. Massachusetts,* __ U.S.__, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

3

at 418. We give almost total deference to a trial court's determination of historical facts and review *de novo* the trial court's application of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). *See also Wall v. State*, 184 S.W.3d 730, 742-43 (Tex.Crim.App. 2006) (applying hybrid standard of review to *Crawford* issue); *Mason v. State*, 225 S.W.3d 902, 907 (Tex.App.--Dallas 2007, pet. ref'd) (same). Error in admitting evidence in violation of a defendant's confrontation right is constitutional error, which necessitates reversal unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Wood v. State,* 299 S.W.3d 200, 214 (Tex.App.—Austin 2009, pet. ref'd).

In *Crawford,* the Supreme Court held the Sixth Amendment confrontation right applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. *Wood v. State,* 299 S.W.3d at 207, *citing Crawford*, 541 U.S. at 51. The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Id*. Whether a particular out-of-court statement is testimonial is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex.Crim.App. 2008). It is the State's burden to establish the admissibility of the testimony it seeks to introduce at trial. *Id.*

In Texas, a medical examiner is required to conduct an investigation when a person dies under circumstances warranting the suspicion that unlawful means caused the death. Tex. Code Crim. Proc. Ann. art. 49.25, § 6(a)(4) (West 2010). If the medical

4

examiner's investigation leads the examiner to determine the cause of death beyond a reasonable doubt, then the medical examiner must file a report stating the cause of death with the district, criminal district or county attorney. *Id.* § 9(a).

In *Melendez-Diaz*, the Supreme Court held that reports prepared by analysts at the state crime laboratory stating that a substance was cocaine were testimonial statements, and that the analysts who prepared the reports were witnesses for purposes of the Sixth Amendment. *Melendez-Diaz v. Massachusetts*, __ U.S. __, 129 S. Ct. 2527, 174 L.Ed.2d 314 (2009). The reports were created specifically as evidence in a criminal proceeding. *Id.; Bullcoming v. New Mexico,* ___ U.S. ___, __ S.Ct.___, 2011 U.S. LEXIS 4790, at *8 (2011). The Supreme Court observed that confrontation of the analyst was necessary to permit defendants to expose analysts who may be incompetent or even dishonest. *Melendez-Diaz,* 129 S.Ct. at 2536-37. Moreover, "the prospect of confrontation will deter fraudulent analysis in the first place." *Id.* at 2537. Absent a showing that the analysts were unavailable to testify and that the defendant had a prior opportunity to cross-examine them, the defendant was entitled to be confronted with the analysts at trial. *Bullcoming,* __ U.S. ___, __ S.Ct. ___, 2011 U.S. LEXIS 4790 at * 9-10.

Under *Melendez-Diaz*, a statement made for prosecutorial use is testimonial even if the statement does not directly accuse the defendant of wrongdoing, does not describe the crime or any human action related to it, or describes the results of neutral scientific testing. *Grey v. State,* 299 S.W.3d 902, 909-10 (Tex.App.—Austin 2009, pet. ref'd). After the issuance of the opinion in *Melendez-Diaz*, Texas courts have rejected

5

arguments that autopsy reports are not testimonial because they contain "sterile recitations" of "objective facts," are "routine, descriptive, and nonanalytical," and "[do] not relate subjective narratives pertaining to [the defendant's] guilt or innocence." *Id., citing Wood,* 299 S.W.3d at 208.[6]   An autopsy report is testimonial if the medical examiner would reasonably expect the statements in the report to be used prosecutorially. *Gilstrap v. State,* No. 04-09-00609-CR, 2011 Tex.App. LEXIS 181, at *4-5 (Tex.App.—San Antonio Jan. 12, 2011, pet. ref'd), *citing Melendez-Diaz,* __U.S.___, 129 S. Ct. 2527, 2531, 174 L. Ed. 2d 314.

The victim here had a gunshot wound that, given the location of the wound, did not appear to be self-inflicted, making it reasonable for a medical examiner to expect any statements or reports made would be used in a criminal prosecution. *See Martinez v. State,* 311 S.W.3d 104, 110-11 (Tex.App.—Amarillo 2010, pet. ref'd) (finding under circumstances described it was reasonable to assume autopsy report would be used prosecutorially).  The autopsy report here thus fell within the "core class of testimonial statements" as described in the Supreme Court's recent Confrontation Clause decisions. *Crawford,* 541 U.S. at 51-52.  *See also Melendez-Diaz*, ___ U.S. at ___, 129 S. Ct. 2527 at 2532; *Davis*, 547 U.S. at 830.

---

[6] The Texas cases the State relied on at trial, and cite on appeal, holding that an autopsy report is not testimonial, were decided before the Supreme Court announced its opinion in *Melendez-Diaz* in 2009.  *See Campos v. State*, 256 S.W.3d 757, 762 (Tex.App.--Houston [14th Dist.] 2008, pet. ref'd); *Pierce v. State*, 234 S.W.3d 265, 269 (Tex.App.--Waco 2007, pet. ref'd); *Mitchell v. State*, 191 S.W.3d 219, 222 (Tex.App.--San Antonio 2005, pet. ref'd); *Denoso v. State*, 156 S.W.3d 166, 182 (Tex.App.--Corpus Christi 2005, pet. ref'd).

Appellant's sole issue is premised on the assertion that Dr. Beaver's autopsy report and Dr. Parsons' testimony based on the report was testimonial hearsay under *Crawford.* We agree.

At trial, Dr. Parsons testified he reviewed Dr. Beaver's autopsy report. Parsons opined the autopsy appeared to have been conducted with proper protocol. He described Martinez's injuries in response to the prosecutor's question, "And based on your review of the autopsy report, can you tell us what injuries Mr. Martinez had?"[7] Later, he responded positively to the prosecutor's question, "And from your review of the autopsy report, he died from being shot by a firearm?"

However, as we will later discuss, in addition to this testimony based on the autopsy report, Dr. Parsons testified that he personally examined photographs and x-rays taken of Martinez's body. Photographs taken during an autopsy are not testimonial hearsay. *Wood,* 299 S.W.3d at 215; *Gilstrap,* 2011 Tex.App. LEXIS 181, at *5, fn. 2; *accord* Tex. R. Evid. 801(a).

When the State elected to introduce Dr. Beaver's autopsy report, Dr. Beaver became a witness appellant had the right to confront. *See Bullcoming,* __ U.S. ___, __ S.Ct. ___, 2011 U.S. LEXIS 4790 at * 9-10, *citing Melendez-Diaz,* __ U.S. at __, 129 S.Ct. at 2534. The jury had access to the report during its deliberations. Further, Dr. Parsons' expressed expert opinion of the cause of death was based solely on the

---

[7] Dr. Parsons testified, "[t]he decedent identified in the report as Israel Martinez suffered a gunshot wound, which entered through the arm, perforated the left lung, the aorta, and was lodged in the hilum of the right lung." We note this testimony simply to indicate its consistency with other evidence we later discuss.

autopsy report. His trial testimony was very brief and he stated no other bases for his opinion. We therefore find that, under the circumstances here, the admission of the autopsy report and Dr. Parsons' testimony based on the report violated the Confrontation Clause. *See Martinez,* 311 S.W.3d at 112; *Wood,* 299 S.W.3d at 213.

*Harm*

Because the error was of constitutional dimension, we must reverse the conviction unless we determine beyond a reasonable doubt it did not contribute to appellant's conviction. Tex. R. App. P. 44.2(a); *Langham v. State,* 305 S.W.3d 568, 582 (Tex.Crim.App. 2010); *Davis v. State*, 203 S.W.3d 845, 849-53 (Tex.Crim.App. 2006); *Martinez,* 311 S.W.3d at 104. In determining whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt, the following factors are relevant: (1) how important the out-of-court statement was to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. *Langham*, 305 S.W.3d at 582 (*quoting Scott v. State*, 227 S.W.3d 670, 690-91 (Tex.Crim.App. 2007)). In determining whether the error was actually a contributing factor in the jury's deliberations, we may also consider the "source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. *Langham,* 305 S.W.3d at 582. In consideration of these factors, we must determine whether "there is a

8

reasonable possibility that the *Crawford* error moved the jury from a state of non-persuasion to one of persuasion on a particular issue." *Id.* Our harm analysis does not turn on whether, discounting the erroneously admitted evidence, the remaining evidence was legally sufficient to convict. Instead, the question is whether, given the state of the record as a whole, we can say, to a level of confidence beyond a reasonable doubt, the erroneously admitted evidence did not contribute to the jury's verdict. *Scott,* 227 S.W.3d at 694.

The Penal Code defines causation in terms of a "but for" causal connection. Tex. Penal Code Ann. § 6.04(a) (West 2010) (person is criminally responsible "if the result would not have occurred but for his conduct");[8] *Robbins v. State*, 717 S.W.3d 348, 351 (Tex.Crim.App. 1986); *Grotti v. State*, 209 S.W.3d 747, 758 (Tex.App.—Fort Worth 2006), *aff'd* 273 S.W.3d 273 (Tex.Crim.App. 2008). Appellant was charged with murder under section 19.02 of the Penal Code. Tex. Penal Code Ann. § 19.02 (West 2010). Under either of the theories alleged in the indictment and contained in the charge, the State was required to prove beyond a reasonable doubt that appellant's conduct of shooting Martinez with a firearm caused his death, that is, Martinez's death would not have occurred but for appellant's act of shooting him.

At first blush, the autopsy report and Dr. Parsons' testimony from it seem critical to the State's case. Above Dr. Beaver's signature on the first page of the report is a

---

[8] Penal Code § 6.04(a) addresses also results caused by concurrent causes. No one, at trial or on appeal, has suggested a concurrent cause for Martinez's death. There was evidence Martinez's blood contained alcohol, marijuana and cocaine. No one suggests, and we find no evidence, that Martinez's ingestion of these substances was a concurrent cause of his death.

paragraph labeled "Opinion" that reads: "CAUSE OF DEATH: Based upon the information available to me at this time, it is my opinion that the cause of death is best certified as Gunshot Wound to the Chest with the manner of death classified as Homicide." The jury heard, however, other evidence bearing on the cause of death. Considering the entire record, we are satisfied that admission of the autopsy report itself and Dr. Parsons' testimony reciting the report's findings, played little or no role in "moving the jury from a state of non-persuasion to one of persuasion" on the issue of the cause of Martinez's death.

At this point in the analysis, it is important to recall that the law recognizes circumstantial evidence to be as probative as direct evidence to establish a vital fact. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The evidence of the cause of Martinez's death begins with appellant's testimony of his confrontations with Martinez and the other man during the night of Martinez's death. From that evidence, the jury would have considered that Martinez was alive and well when appellant, fearing he was in danger from Martinez and his companion, began firing his 9mm pistol in their direction.

A paramedic testified that she arrived on the scene very shortly after the shootings. She first attended the other man, who was bleeding from a gunshot wound in his buttocks. She then noticed Martinez, lying on the ground. He was not responsive but she could find no injuries. She examined his head, neck and chest, all without finding an injury. She could see no bleeding. The body was warm, and she tried to resuscitate Martinez using CPR, to no avail. Puzzled, she attached her portable heart

10

monitor to Martinez. The reading was "asystole, three straight lines on the monitor," indicating Martinez was dead. It was only after Martinez was loaded into an ambulance for the hospital, in the better light inside the ambulance, that the paramedic removed his shirt and located a small bullet wound in his left arm. There was a tiny spot of blood on his shirt at the point of the wound.

As noted, while most questions relevant to the cause of death Dr. Parsons was asked at trial were based merely on his review of Dr. Beavers' autopsy report, he also testified he reviewed photographs and x-rays taken of the body, evidence that is non-testimonial in nature. He told the jury the entrance wound was seen in a photograph, but that the bullet's path through the left lung was not photographed. He said there "was a photograph of the injury to the aorta." He also said the recovered bullet was photographed, and that "x-rays did show the injury or the . . . location of the bullet before the dissection of the body occurred."

And we cannot ignore in our analysis the testimony of the justice of the peace. As noted, she identified the autopsy report and testified she ordered the autopsy. She also agreed that she was present when the autopsy was performed, "during the entire autopsy." She identified the two photographs taken during the autopsy that were admitted. One shows the bullet entry wound on Martinez's upper left arm. Finally, without objection, she responded to the prosecutor's question, "As a result of the autopsy, did you rule on a manner of death?" The justice of the peace answered, "Yes. Gunshot wound."

11

While perhaps non-responsive,[9] the answer told the jury what other evidence also made rather clear, that Martinez's death was caused by the round that passed through his left arm, entered and traversed his lung, contacted his aorta and came to rest at the location shown by the x-ray.

Appellant's case, based as noted on his claim of self-defense, neither challenged this evidence of the cause of Martinez's death nor suggested any other cause. He acknowledged he fired the 9mm firearm in the direction of Martinez. A ballistics expert testified the cartridges recovered were consistent with a 9mm firearm.

The cause of death was not a contested issue at trial. Having reviewed the entire record, we conclude the autopsy report and Dr. Parsons' testimony reiterating its findings were only marginally important to the State's case; the autopsy report and Dr. Parsons' testimony about it were cumulative of other evidence; persuasive circumstantial and direct evidence corroborated the improperly-admitted evidence and no evidence contradicted it; and both as to the cause of death and as to the other elements of the charged offense, the prosecution's case overall was strong. *Langham*, 305 S.W.3d at 582. The State did not mention either the autopsy report or Dr. Parsons' testimony in its closing argument.

Accordingly, reviewing the record as a whole, we find beyond a reasonable doubt that the erroneously admitted autopsy report evidence did not contribute to the jury's

---

[9] "Manner of death" is not the same as "cause of death." *See Sanchez v. State,* No. PD-0961-7, 2010 Tex. Crim. App. LEXIS 1242, at *22-24 (Tex.Crim.App. Oct. 6, 2010) (discussing "manner of death," "manner and means," and "cause of death").

12

verdict. *Scott,* 227 S.W.3d at 690-91. *Davis,* 203 S.W.3d at 854-55. Finding the *Crawford* error here harmless, we overrule appellant's issue and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.