# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00355-CR

**Ronald Grey, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-07-202476, HONORABLE MELISSA YOUNG GOODWIN, JUDGE PRESIDING

## O P I N I O N

A jury found appellant Ronald Grey guilty of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02 (West Supp. 2009). After finding that appellant had one previous felony conviction, the jury assessed his punishment at twenty years' imprisonment. In four points of error, appellant contends that the evidence is legally insufficient to sustain the jury's verdict, his Sixth Amendment confrontation right was violated, and his trial counsel was ineffective. We overrule these contentions and affirm the conviction.

## BACKGROUND

Around 11:30 p.m. on May 5, 2007, appellant and his fiancee, Bridgette Bryant, entered a convenience store on Ben White Boulevard in Austin. The cashier at the store, George Rosales, testified that appellant was waving his arms and screaming, obviously angry.

Bryant testified that appellant was angry at her because she had been on a three-day crack cocaine binge. Bryant added that before they entered the store, appellant told her, "God forgive me for this, I'm going to kill you, bitch." While in the store, appellant threw a can of beer at Bryant, missing her. Rosales testified that Bryant, who appeared to be "in a panic, scared," told him that appellant had a knife and was going to kill her. When appellant left the store, Rosales called 911. Bryant remained at the store and spoke to Officer Christopher Sablotne, who responded to the call. After taking Bryant's report and unsuccessfully looking for appellant in the area, Sablotne left the scene.

Appellant and Bryant returned to the store twenty minutes later, near midnight. Rosales saw them outside. He testified that appellant and Bryant were still arguing, with appellant shouting and waving his arms. Bryant still appeared to be "excited, scared." Bryant entered the store, leaving appellant outside, and asked Rosales to lock the door behind her. Rosales did so, and then he called 911 a second time. Sablotne also responded to this call. Bryant told the officer that appellant had made another threat to kill her. She said she was afraid that appellant was hiding nearby, waiting to attack her, "because that's what he usually does, he hides somewhere and surprises her." Bryant and Sablotne discussed the possibility of Bryant going to SafePlace, but she decided against it. Bryant told Sablotne that she had a friend on the way, but this friend never arrived. Bryant decided to go home to wait for her friend, and the officer offered to take her there. Bryant declined this offer and said she would walk.

Sablotne, concerned for Bryant's safety, decided to drive beside her as she walked home. Bryant had walked only a few yards from the convenience store parking area when appellant suddenly appeared from behind a bank of mail boxes. The officer testified, "I pulled out right there

2

and turned my bright lights on so I could get a better view of the other side of the street . . . . So I pulled along here and, all of a sudden, I see somebody dart out from right here with a large rock in their hand and it appeared they were making a lunge straight toward [Bryant]." Sablotne accelerated his patrol car to block the attacker. Appellant bumped into the patrol car, dropped the rock, and fell to the ground. He was immediately arrested.

Bryant testified that as she was walking away from the store, she "looked up and saw him coming," then she backed up "quick like, oh, shit, you know." Bryant also testified that appellant "was coming at me really fast." She said, "I was surprised and I was a little bit afraid, yes, a little bit. More surprised than anything." She added, "He comes this way and I just move out of his way and let the police intercede him and tell him to get on the ground." Sablotne testified that he glanced at Bryant when appellant appeared, and that she "was trying to get away. She was running quickly." Bryant denied running from appellant. She said, "I just backed up and they got in between us." Bryant testified that she never saw the rock in appellant's hand.

**SUFFICIENCY OF EVIDENCE**

The indictment alleged that appellant intentionally and knowingly threatened Bryant with imminent bodily injury, and that appellant used and exhibited a deadly weapon, a rock, during the commission of the assault. *See id*. § 22.01(a)(2) (assault), § 22.02(a)(2) (aggravating element). Appellant contends that the evidence is legally insufficient to support the jury's findings both as to his commission of the assaultive threat and his use or exhibition of a deadly weapon.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential

3

elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 234 S.W.3d at 778.

In *McGowan v. State*, 664 S.W.2d 355 (Tex. Crim. App. 1984), the defendant was convicted for the assault by threat of two persons, a mother and her daughter. The evidence showed that the defendant pushed the daughter to the ground, beat and kicked her, then stabbed her. *Id*. at 357. The daughter, seeing the knife in the defendant's hand, begged him not to cut her. *Id*. The mother, unaware that the defendant was armed, reached down to aid her daughter. *Id*. When she did so, the defendant stabbed her and then fled. *Id*. The court of criminal appeals found the evidence legally sufficient to prove that the defendant had threatened the daughter with imminent bodily injury. *Id*. at 358. The court held, however, that the evidence did not support the defendant's conviction for threatening the mother. *Id*. The mother never saw the defendant holding the knife, and there was no evidence that he had threatened her in any way before stabbing her. *Id*. at 357.

Appellant urges that the evidence in this case is analogous to the evidence in *McGowan* with regard to the assault of the mother. He argues, "[Bryant] was unaware of appellant's possession of the rock. No verbal threat was made before appellant was restrained by the officer. Appellant agrees with the officer's assessment that he prevented the assault from occurring. That keen and commendable police work also prevented appellant from threatening [Bryant] with the imminent infliction of bodily injury as alleged in the indictment." In effect, appellant contends that

4

while the evidence may show him to be guilty of attempted bodily injury assault (just as McGowan was shown to be guilty of the bodily injury assault of the mother), the State failed to prove that he ever threatened Bryant as alleged.

Appellant's argument ignores the events shown to have preceded the final attack. *See Olivas v. State*, 203 S.W.3d 341, 349-50 (Tex. Crim. App. 2006) (considering defendant's threatening conduct leading up to charged incident in determining sufficiency of evidence to support conviction for assault by threat). Appellant had twice threatened to kill Bryant that night, once at 11:30 and again at midnight, just minutes before he ran at her with the rock. He had also thrown a can of beer at Bryant inside the store. Both the store clerk, Rosales, and the officer, Sablotne, testified that Bryant was visibly afraid of appellant, and Bryant told both of them that appellant was armed with a knife. Bryant also told Sablotne that she was afraid that appellant was hiding nearby, lying in wait to attack her. A threat can be communicated by action or conduct as well as by words. *McGowan*, 664 S.W.2d at 357. Although there is no evidence that Bryant saw the rock in appellant's hand when he emerged from behind the mail boxes, there is no requirement that a victim must instantaneously perceive a threat as the actor is performing it. *Olivas*, 203 S.W.3d at 350-51. Bryant testified that she saw appellant running toward her, that she was surprised and afraid, and that she quickly backed away to allow the police to intercede. Viewing all the evidence in the light most favorable to the verdict, we hold that the jury could rationally find beyond a reasonable doubt that appellant, by his actions, threatened Bryant with imminent bodily injury. Point of error one is overruled.

5

Appellant contends that the State failed to prove that he used or exhibited a deadly weapon during the assault. He concedes that the rock, which was shown to weigh eight pounds, was in the manner of its use capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2009). He argues, however, that there is no evidence that he used or exhibited the rock during the offense. Sablotne never saw appellant raise the rock above his head as if to strike someone, and the officer estimated that appellant was twenty to twenty-five feet away from Bryant when he was stopped. From this, appellant argues that he was not shown to have used the rock to facilitate the offense. *See Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). Appellant further argues that because Bryant did not see the rock, the evidence is legally insufficient to prove that he used or exhibited the rock during the commission of the assault.

We have already held that appellant's conduct was sufficient to threaten Bryant with imminent bodily injury even though she did not see the rock in appellant's hand as he ran toward her. The State had only to prove that appellant used or exhibited the rock during the commission of the assaultive threat. *See* Tex. Penal Code Ann. § 22.02(a)(2). It is undisputed that appellant had the rock in his hand as he ran toward Bryant. The rock is clearly visible in the video recording of the incident made by equipment in Sablotne's patrol car. Viewing the evidence in the light most favorable to the verdict, the jury could rationally find beyond a reasonable doubt that appellant consciously displayed the rock during the commission of the offense. *See Patterson*, 769 S.W.2d at 941 (defining "exhibit"). Moreover, the jury could reasonably find that the exhibition of the rock was intended by appellant to induce fear in Bryant and thus facilitated the underlying assault. *See id*.

(defining "use"); *see also McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Point of error two is overruled.

## CONFRONTATION

Appellant contends that his Sixth Amendment confrontation right was violated at the punishment stage of the trial. The subject of this contention is State's exhibit 16A, a "pen pack" documenting appellant's 1989 retaliation conviction in Dallas County. Among the documents contained in the exhibit is a four-page department of corrections social and criminal history prepared by an unnamed department employee when appellant was admitted into prison in January 1990. Included in this history is a page-and-a-half summary, based in part on an interview with appellant, recounting fifteen to nineteen prior arrests, juvenile adjudications, criminal charges, criminal convictions (some with details of the offense), probation revocations, prison disciplinary violations (some with details), and a detailed account of the retaliation offense. Appellant contends that this summary is an out-of-court testimonial statement offered to prove the truth of the matters stated in violation of *Crawford v. Washington*, 541 U.S. 36 (2004).[1]

The State urges that appellant did not preserve this contention for appeal. We disagree. The penitentiary record was first offered by the State as exhibit 16. Appellant objected to the exhibit on relevance grounds, and the objection was overruled. There was a brief recess, then the court asked defense counsel if he had "some additional comments on 16." Counsel said that he

---

[1] Appellant's point of error is directed to the summary as a whole. Although the summary contains hearsay within hearsay, appellant does not complain of any specific statements within the summary.

7

did, and then he objected that the exhibit contained hearsay and violated appellant's Sixth Amendment right of confrontation. From the comments of counsel, we infer that this objection was directed to the summary of appellant's criminal history described above. After further discussion by counsel and the court, the State agreed to remove certain other documents from the pen pack, but not the criminal history summary. The State then reoffered the pen pack as exhibit 16A. Appellant renewed his confrontation objection, which was overruled. Appellant's contention was preserved for appeal.

The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the right to be confronted with the witnesses against him. U.S. Const. amend. XVI. In *Crawford*, the Supreme Court held that this right applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. 541 U.S. at 51. The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant (the witness) is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Id*. at 68. Whether a particular out-of-court statement is testimonial is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). It was the State's burden, as the proponent of the challenged evidence, to establish its admissibility. *Id*. We review the trial court's ruling admitting the evidence under a bifurcated standard, giving deference to the court's findings regarding any pertinent historical facts but reviewing de novo the court's application of the law to those facts. *Wall v. State*, 184 S.W.3d 730, 742-43 (Tex. Crim. App. 2006).

The State argues that the admission of the challenged evidence was not error because the penitentiary records were business records. *See* Tex. R. Evid. 803(6). But after the State filed its

8

brief, the Supreme Court announced its opinion in *Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 174 L.Ed.2d 314 (2009).  In that case, the Court held that reports prepared by analysts at the state crime laboratory stating that a substance was cocaine were testimonial statements, and that the analysts who prepared the reports were witnesses for the purpose of the Sixth Amendment.  *Id*. at 312-22.  The government argued, among other things, that the reports were not testimonial because they were business records.  *Id*. at 328.  The Court rejected the notion that business records are categorically nontestimonial:

> Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.  Whether or not they qualify as business or official records, the analysts' statements here—prepared specifically for use at petitioner's trial—were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.

*Id*. at 329-30.  Regardless of whether they qualify for admission under the rules of evidence, documents kept in the regular course of business are not admissible under the Confrontation Clause "if the regularly conducted business activity is the production of evidence for use at trial." *Id*. at 328. Insofar as the State argues that business records are categorically exempt from *Crawford*, the argument is without merit.

Appellant argues that the challenged evidence is similar to that held to be testimonial hearsay in *Russeau v. State*, 171 S.W.3d 871 (Tex. Crim. App. 2005).  In that case, the State introduced at the punishment stage jail "incident reports" and prison "disciplinary reports" that "purported to document, in the most detailed and graphic of terms, numerous and repeated

9

disciplinary offenses on the part of [the defendant] while he was incarcerated." *Id*. at 880. None of the persons who observed the defendant's behavior or prepared the reports testified at the trial. *Id*. The court of criminal appeals held that the reports contained testimonial statements that were inadmissible under the Confrontation Clause. *Id*. at 880-81.

In *Segundo v. State*, the State offered in evidence certificates from the board of pardons and paroles stating that the defendant had "failed to fulfill the terms and conditions" of his release, had "violated the conditions of administrative release," and was an "administrative release violator." 270 S.W.3d 79, 106 (Tex. Crim. App. 2008) (op. on reh'g). The defendant urged that these documents contained inadmissible testimonial hearsay under the holding in *Russeau*. The court of criminal appeals disagreed. The court explained that unlike the records at issue in *Russeau*, which were "written by corrections officers [and] graphically document[ed] their detailed observations of the defendant's numerous disciplinary offenses," the "'boilerplate' parole-revocation certificates" admitted in this case "did not contain any such testimonial statements, narratives of specific events, or written observations." *Id*. at 107. The court wrote that there was a "distinction between official records that set out a sterile and routine recitation of an official finding or unambiguous factual matter," which are not testimonial, and records that contain "a factual description of specific observations or events that is akin to testimony," which are testimonial. *Id*.

The court of criminal appeals also invoked this distinction in *Smith v. State*, No. AP-75,479, 2009 Tex. Crim. App. LEXIS 527 (Tex. Crim. App. May 9, 2009). Once again, the issue was the admissibility under *Crawford* of prison disciplinary reports and hearing records. *Id*. at *32. The court held that the reports and records at issue "mostly contain bare-bones recitations

10

of infractions committed by [the defendant]" and were not testimonial. *Id*. at \*35. However, two of the documents "go beyond a sterile description and violate appellant's rights as set out in *Russeau*. The reports contain descriptions of the offenses which appear to have been copied from the corrections officers' reports and which purport to document, in detailed terms, [the defendant's] disciplinary offenses." *Id*. at \*35-36 These latter reports, the court held, were inadmissible testimonial hearsay. *Id*. at \*36.

These court of criminal appeals opinions predate *Melendez-Diaz*, and they must be read in light of this most recent Confrontation Clause opinion by the Supreme Court. In *Melendez-Diaz*, the government argued that the laboratory reports at issue were nontestimonial because the analysts were not "accusatory" witnesses, that is, they did not directly accuse the defendant of wrongdoing; rather, their testimony was inculpatory only when taken together with other evidence. *See* 174 L.Ed.2d. at 323. The Court held, however, that the Sixth Amendment "contemplates two classes of witnesses—those against the defendant and those in his favor. The prosecution *must* produce the former . . . . Contrary to respondent's assertion, there is not a third category of witnesses . . . ." *Id*. The Supreme Court also found unconvincing the government's argument that the laboratory analysts, because they had "observe[d] neither the crime nor any human action related to it," were not "conventional witnesses" subject to confrontation. *Id*. at 325. The Court also rejected the argument that, for Confrontation Clause purposes, a distinction should be drawn between testimony recounting historical events and testimony that is the result of "neutral, scientific testing." *Id*.

11

*Melendez-Diaz* makes it clear that if a statement is made for prosecutorial use, or in anticipation that it will be used prosecutorially, the statement is testimonial regardless of the substance of what is said. This is consistent with the opinion in *Crawford*, where the Court did not attempt to comprehensively define a "testimonial statement," but did quote several proposed definitions: "affidavits, custodial examinations, prior testimony . . . or similar pretrial statements that declarants would expect to be used prosecutorially," "statements . . . contained in formalized testimonial materials," and "statements made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 51-52. The Court also held that, at a minimum, statements are testimonial if they are made during testimony at a preliminary hearing, before a grand jury, or at a former trial, or during police interrogations. *Id*. at 68. Each of these proposed or adopted definitions in *Crawford* define a testimonial statement by reference to the declarant's purpose in making the statement as shown by the circumstances in which the statement was made, and without reference to the content of the statement.

The opinion of the Supreme Court in *Davis v. Washington* and its companion case, *Hammon v. Indiana*, also supports the conclusion that it is the intended or anticipated use of a statement that determines whether the statement is testimonial. 547 U.S. 813 (2006). The issue in these two domestic violence prosecutions was whether the defendants' confrontation rights had been violated by the admission of the complainants' out-of-court statements to the police describing the attack and naming the attacker. *Id*. at 817-21. The Supreme Court held that the complainant's statements in *Davis* were not testimonial because the circumstances objectively indicated that the

12

primary purpose of the statements was to enable police assistance to meet an ongoing emergency. *Id*. at 828. The complainant's substantially identical statements in *Hammon*, on the other hand, were held to be testimonial because the circumstances indicated that the primary purpose of the police questioning that produced the statements had been to investigate a possible crime, to establish or prove facts relevant to a later criminal prosecution. *Id*. at 822 & 829-30.

Under *Melendez-Diaz*, a statement made for prosecutorial use is testimonial even if the statement does not directly accuse the defendant or wrongdoing, does not describe the crime or any human action related to it, or describes the results of neutral scientific testing. This Court recently held that under *Melendez-Diaz*, an autopsy report prepared in anticipation of its use at trial was a testimonial statement, rejecting arguments that autopsy reports are not testimonial because they contain "sterile recitations" of "objective facts," are "routine, descriptive, and nonanalytical," and "[do] not relate subjective narratives pertaining to [the defendant's] guilt or innocence." *Wood v. State*, No. 03-08-00257-CR, 2009 Tex. App. LEXIS 7882, at *20-21 (Tex. App.—Austin Oct. 7, 2009, no pet. h.). Similarly, under *Melendez-Diaz*, a prison disciplinary report made in anticipation of its prosecutorial use is testimonial even if it contains only sterile, routine recitations of official findings or unambiguous factual matters. The converse is also true. If an out-of-court statement was not made for prosecutorial use or in reasonable expectation of such use, it is not testimonial even if it is a graphic description of specific observations or events (as in *Davis*, for example). The substance of a particular statement may be a relevant circumstance in deciding whether the statement was made for prosecutorial use, but the Supreme Court's opinions make it clear that *what* was said is less important than *why* it was said.

13

As we have already stated, the summary of appellant's criminal history at issue here is part of a social and criminal history prepared in 1990 upon appellant's arrival at the department of corrections following his 1989 retaliation conviction. The document is stamped "restricted and confidential." The objective circumstances indicate that the document was not prepared for prosecutorial use; appellant had already been convicted, and he was beginning a forty-five-year prison sentence. Instead, the social and criminal history appears on its face to have been prepared for the internal use of the department in determining appellant's proper classification and assignment. We conclude that the challenged criminal history summary, not having been made in anticipation of prosecutorial use, was not testimonial, and the admission of the summary in evidence did not violate appellant's constitutional confrontation right. Point of error three is overruled.

### EFFECTIVENESS OF COUNSEL

Appellant contends that his trial counsel was ineffective because, at the punishment stage of trial, counsel did not object to the admission of State's exhibit 16A, the pen pack from the 1989 Dallas County retaliation conviction, on the ground that the conviction in that case was not shown to be final. This conviction was one of the two previous convictions alleged in the indictment for enhancement of punishment. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2009). The second was a 1980 Harris County robbery conviction. The jury found the latter allegation to be true, but not the former.

The Dallas County judgment found in exhibit 16A reflects that appellant gave notice of appeal. The State did not offer evidence that the conviction had been affirmed on appeal, and therefore the conviction was not shown to be final. *See Johnson v. State*, 784 S.W.2d 413, 414 (Tex.

14

Crim. App. 1990). Only final convictions may be used to formally enhance. *Id*; *see* Tex. Penal Code Ann. 12.42(d). The finality of the Dallas County conviction became a moot issue when the jury found this enhancement allegation to be untrue.

To prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). On this record, appellant does not satisfy either prong.

Appellant argues that exhibit 16A was inadmissible because the Dallas County conviction was not shown to be final, but that is not the case. A conviction must be final to be used for formal enhancement of punishment under section 12.42, but at the punishment stage, the trial court may admit evidence of any matter relevant to sentencing, including the defendant's prior criminal record and conduct "regardless of whether he has previously been charged with or finally convicted of the crime or act." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2009); *see Lopez v. State*, 253 S.W.3d 680, 686 (Tex. Crim. App. 2008) (stating that prior criminal record includes matters other than final convictions). The Dallas County conviction was admissible pursuant to article 37.07, section 3 whether or not it was final, and counsel cannot be accused of having failed to object to inadmissible evidence. Moreover, if counsel was ineffective because he failed to raise the finality issue as it related to the enhancement of punishment pursuant to

15

section 12.42(d), appellant's defense was not prejudiced because the jury found the allegation to be untrue. Point of error four is overruled.

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   November 4, 2009

Publish