**Affirmed and Opinion filed August 26, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00685-CR

**CHARYAN DEMON THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Cause No. 18564**

## OPINION

Appellant Charyan Demon Thomas appeals his conviction for continuous violence against a family member. Appellant argues that the trial court erred in admitting evidence of an extraneous offense under article 38.371 of the Texas Code of Criminal Procedure on the grounds that (1) the statute on its face violates his constitutional rights to due process, and (2) the evidence was admitted in

violation of Rule of Evidence 404(b).[1] Appellant also challenges the trial court's admission into evidence during the punishment phase of trial of disciplinary records affiliated with a previous felony conviction. Concluding that article 38.371 is not unconstitutional on its face, the evidence was not admitted in violation of Rule 404(b), and any error in admitting the disciplinary records was harmless, we affirm.

## *Background*

Complainant is appellant's wife. Complainant testified that one evening in February 2018, she and appellant had been smoking crack cocaine in the bedroom of their apartment. After appellant accused complainant of hiding crack from him, he grabbed her by the throat and covered her mouth and nose, preventing her from breathing normally. Complainant said she felt like she was fighting for her life because she could not breathe. This happened while the couple's three year old daughter was in the room. A neighbor heard the child "screaming and hollering," knocked on the bedroom window, and called 911. After the neighbor knocked, appellant fled.

An officer was dispatched to the apartment. When he arrived, he found complainant distressed, screaming, and crying. Her lip was swollen, she had dry blood around her nose, and she had marks on her neck. She told the officer that she had been assaulted in the bedroom. The officer observed the bedroom and testified, "[S]tuff was just everywhere." The sheets were off the bed, and the room was disheveled, which was consistent with the allegation that an assault had occurred there. Photographs of complainant taken after the assault showed marks on her lip,

---

[1] Article 38.371 allows, among other things, testimony or evidence concerning the nature of the relationship between the actor and the alleged victim in certain offenses involving family or dating violence. Tex. Code Crim. Proc. art. 38.371(b).

2

throat, and neck that complainant said were made by appellant's hands. She also had scratches and blood on her face and neck.

Complainant also testified that one evening in December 2018, she got off work, went home, and began smoking crack with appellant again. According to complainant, she did not want to smoke, but she "knew what was coming if [she] didn't do it," which "could have been a choke, a hit, a punch, a threat." After smoking on and off for four to five hours, appellant accused complainant of cheating on him or hiding crack. Complainant said appellant put both of his hands around her neck and threw her a couple of times, and each time, she landed in the bathtub or the bathroom closet. To try to get appellant to leave, complainant told him she had more crack in the car. He walked outside, but when complainant tried to lock the sliding glass door to the apartment, appellant forced his way back in and punched complainant in the eye. She fell to the ground. Appellant got on top of her and grabbed her by "the shirt, around [her] neck."

A neighbor saw the attack and screamed, and complainant ran into the bathroom. Complainant shut the bathroom door and locked it. Appellant kicked the bathroom door in with his foot, grabbed his things, and fled. Complainant testified that during the assault she was afraid her head would hit the toilet or hit the side of the bathtub and she would die. Photographs taken after the assault and admitted at trial showed blood on complainant's shirt, fingernail marks on her neck, and bruises on her throat from being grabbed. Complainant testified that appellant strangled her more than one time that night.

The officer who was dispatched to the scene testified that when he arrived, the apartment was in disarray. There were vertical blinds all over the floor. The officer said, "It looked like there was a struggle inside of the house. There was stuff everywhere. Blood." Complainant was "upset and crying." She had a

laceration under her eye, and her neck was "all scratched up on both sides." Complainant had blood on her shirt, and the officer thought it was from the laceration under her eye. Complainant was transported to the hospital, and after she was discharged, the officer took her to a hotel for the night so she would be safe.

Another officer took complainant home the next day. He testified that she "appeared to be beaten very badly." Her apartment was "[v]ery disheveled, very out of order, things were thrown about. There was blood on the floor, the bathroom door was partially broken off as well."

A grand jury indicted appellant for continuous violence against the family by intentionally, knowingly, or recklessly causing bodily injury to complainant (1) in February 2018 by impeding the normal breathing or circulation of the blood by applying pressure to the throat or neck and by blocking the nose or mouth, and (2) in December 2018 by impeding the normal breathing or circulation of the blood by applying pressure to the throat or neck. The grand jury further alleged that appellant used or exhibited a deadly weapon, his hands, during the commission of the offenses.

Complainant conceded at trial that she had filed at least three non-prosecution affidavits in which she attested that she had falsely accused appellant of injuring her. She had attested that her injuries were caused by other people and by her running into the blinds while she was high on crack. She had also testified during appellant's bond hearing that appellant did not cause her injuries. Complainant wrote three letters to appellant stating that she lied to the police. Complainant testified at trial that she wrote the letters because she loved appellant. She also said, "I've lied about a lot of things" but that she was tired of not facing the truth of what happened during the assaults. One of the officers testified that it is common for victims of family violence to report an assault and then recant

"[b]ecause they are scared of the suspect" or want to protect the suspect.

The doctor who treated complainant after the December assault testified that complainant's injuries were likely consistent with being punched in the face and choked. He said complainant had two major sets of injuries—the laceration under her eye that required sutures and marks on her neck consistent with allegations of being choked. He conceded it would technically be possible for complainant's injuries to be self-inflicted but stated "[i]t would be very difficult to do that to yourself." He said the injuries were not consistent with "accidentally bumping into some mini blinds." The injuries were consistent with what the doctor "would expect in strangulation." Human hands can cause death by strangulation. Whether someone has been strangled must be determined by a review of the totality of the circumstances.

Appellant's defense strategy was to challenge complainant's credibility as to whether appellant caused complainant's injuries. The trial court admitted evidence of another assault that occurred in April 2017 for which appellant was indicted. Prior to the State's introduction of the evidence, the trial court gave a limiting instruction that the evidence was being offered by the State "for purposes of identity to rebut a defensive theory and/or to show the previous and subsequent relationship of the defendant and [complainant]." The jury was instructed to limit its consideration of the evidence as follows:

> You are not to consider that evidence at all unless you find, beyond a reasonable doubt, that the defendant did in fact commit the wrongful acts . . . . Even if you do find that the defendant committed these wrongful acts, you may consider this evidence only for the limited purposes I described. You may not consider this evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense. [Y]ou should consider this evidence only for the specific limited purposes described. To consider it for any other purpose would be improper.

5

Complainant testified that on the day of the April 2017 assault, appellant again was smoking crack. After complainant asked for some crack and appellant told her no, she decided to take a bath. Appellant became angry, punched complainant in the eye, and threw her. She blacked out and woke up "over the sink." She had a broken eye socket and a broken finger. Photographs of complainant from that day reflected injuries to her face and hands. Complainant also testified that if she stayed in a relationship with appellant, she believed she would die.

During the punishment phase of trial, the trial court admitted over appellant's objections disciplinary records attached to a penitentiary packet from appellant's previous felony conviction for aggravated robbery.[2] The trial court instructed the jury that it could not "consider any evidence of any particular wrongdoing unless [it found], beyond a reasonable doubt, that the defendant did, in fact, commit that wrongful act."

### *Discussion*

Appellant contends the trial court erred in admitting evidence under article 38.371 of the April 2017 assault on the grounds that (1) article 38.371 on its face violates principles of constitutional due process, and (2) the trial court misapplied article 38.371 and admitted the evidence in violation of Rule 404(b). Appellant also challenges the trial court's admission during the punishment phase of the disciplinary records attached to appellant's pen pack.

---

[2] Penitentiary packets, also referred to as pen packs, are records of a person sent to prison after a conviction and are maintained by the Texas Department of Criminal Justice. *Romero v. State*, No. 04-20-00111-CR, 2021 WL 1269912, at *1 n.2 (Tex. App.—San Antonio Apr. 7, 2021, pet. ref'd) (mem. op., not designated for publication).

## I.    Constitutionality of the Statute

In his first issue, appellant contends that article 38.371 violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Appellant brings a facial challenge to the statute, asserting that "the statute is facially unconstitutional in all of its applications." We address this issue as a matter of first impression.

The version of article 38.371 in effect when appellant's case was tried applies to certain family violence offenses, including the one for which appellant was convicted, and provides the following:

> (b) In the prosecution of an [applicable] offense . . . , subject to the Texas Rules of Evidence or other applicable law, each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense described . . . , including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim.

> (c) This article does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law.

Tex. Code Crim. Proc. art. 38.371(b), (c) (former version).

We review a challenge to the constitutionality of a statute de novo. *Vandyke v. State*, 538 S.W.3d 561, 570 (Tex. Crim. App. 2017). Appellant bears the burden of establishing the statute's unconstitutionality. *See Allen v. State*, 614 S.W.3d 736, 740 (Tex. Crim. App. 2019). We begin with the presumption that the statute is valid. *Id*. We seek to interpret the statute in a way to support and uphold its constitutionality. *Id*. The burden to overcome the statute's presumed constitutionality is high, but a facial challenge carries an even higher burden. *Id*.

7

Because appellant brings a facial challenge to the statute, he must establish that no set of circumstances exists under which the statute would be valid. *See id*. at 741. Given this high burden, a facial challenge is the most difficult to mount successfully. *Id*.

Appellant's facial challenge is rooted in the Due Process Clauses of the United States Constitution. The Due Process Clauses in the Fifth and Fourteenth Amendments prohibit states from depriving any person of life, liberty, or property, without due process of law. U.S. Const. amends. V, XIV. To comply with due process, the State must prove, beyond a reasonable doubt, every element of the crime charged. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)); *Harris v. State*, 475 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Generally, an accused must be tried only for the offense with which he is charged and may not be tried for a collateral crime or being a criminal generally. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991); *Harris*, 475 S.W.3d at 399. The essential guarantee of due process is that the government may not imprison or otherwise physically restrain a person except in accordance with fair procedures. *Long v. State*, 742 S.W.2d 302, 320 (Tex. Crim. App. 1987), *overruled on other grounds, Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990); *Harris*, 475 S.W.3d at 399.

Appellant acknowledges that he does not have a fundamental right to a trial free from the introduction of extraneous offense evidence. *See Harris*, 475 S.W.3d at 401. Because appellant does not contend that the statute violates a fundamental right, we review the statute under the rational basis test—is the statute reasonable, not arbitrary, and rationally related to a legitimate state interest? *See Schlittler v. State*, 488 S.W.3d 306, 315 (Tex. Crim. App. 2016); *Jackson v. State*, 807 S.W.2d

8

387, 390 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd).

Although the rule provides that evidence of extraneous offenses may not be used against the accused in a criminal trial, this general prohibition carries with it numerous exceptions.[3] *Harris*, 475 S.W.3d at 401 (citing *Daggett v. State*, 187 S.W.3d 444, 450–51 (Tex. Crim. App. 2005)). Article 38.371 provides another exception to the general rule by allowing "evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . , including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." Tex. Code Crim. Proc. art. 38.371(b).

We discussed the importance of evidence regarding the nature of the family relationship under article 38.371 in *Gonzalez v. State*, 541 S.W.3d 306, 312 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Noting that complainants in family violence cases often do not testify at trial, we stated that the nature of the relationship between the actor and complainant may be relevant to, among other things, confirm the complainant's initial—and later recanted—statements to police, or to explain the complainant's unwillingness to cooperate with law enforcement or prosecution. *Id.* Allowing the State to present this evidence at trial is thus rationally related to a legitimate state interest—to (1) show why someone who was allegedly subjected to domestic violence may be uncooperative with law enforcement, (2) confirm the veracity of a complainant's initial but later recanted statements to police, and (3) contextualize the nature of the family relationship. *See id.*

---

[3] For example, "Rule 404(b) sets out an illustrative, not exhaustive, list of exceptions to the prohibition against admitting evidence of extraneous offenses including 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Harris*, 475 S.W.3d at 401 (quoting *Daggett v. State*, 187 S.W.3d 451 n.13 (Tex. Crim. App. 2005)).

Appellant contends that article 38.371 is unconstitutional because it renders a trial fundamentally unfair by violating the general prohibition against admitting evidence of extraneous offenses "without expressly requiring a balancing test or any of the other procedural safeguards found in similar evidentiary statutes." According to appellant, article 38.371 implicitly allows the admission of extraneous offense evidence "expressly prohibited by Rule 404(b)." But the statute expressly states that it "does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law." Tex. Code Crim. Proc. art. 38.371(c). Thus, the statute incorporates the procedural safeguards in the Rules of Evidence. For example, a defendant is entitled to a balancing test under Rule 403 upon request. Tex. R. Evid. 403; *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997) ("Once a Rule 403 objection as to prejudice versus probative value is invoked, the trial judge has no discretion as to whether or not to engage in the balancing test required by that rule.").

A defendant is also entitled under Rule 404(b) to notice upon request of whether the State intends to use evidence of crimes, wrongs, or other acts. Tex. R. Evid. 404(b)(2). We previously held that article 38.371 does not conflict with Rule 404(b) and is not "an end-run around Rule 404(b)." *Gonzalez*, 541 S.W.3d at 312. Rule 404(b) provides a non-exhaustive list of evidence of crimes, wrongs, or other acts admissible for purposes other than to prove a person's character. Tex. R. Evid. 404(b) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). Article 38.371 merely provides another purpose— to admit evidence of the nature of the relationship between the actor and complainant in family violence cases. *See, e.g., Fernandez v. State*, 597 S.W.3d

546, 566 (Tex. App.—El Paso 2020, pet. ref'd) ("[A]rticle 38.371 shows on its face a legislative determination that 'testimony or evidence regarding the nature of the relationship between the actor and the alleged victim' is automatically one of the contemplated and non-exhaustive 'relevant facts and circumstances' under the article.").

We conclude that article 38.371 does not violate the Due Process Clauses of the Fifth and Fourteenth Amendments. The statute is rationally related to a legitimate state interest—to allow the State to present evidence (1) explaining why a complainant in a domestic violence case may be uncooperative, (2) confirming the veracity of a complainant's initial but later recanted statements to police, and (3) contextualizing the nature of the relationship. And the statute includes proper procedural safeguards to prevent the admission of evidence of the person's character in violation of his due process rights. We overrule appellant's first issue.

## II.    Admissibility of the Extraneous Offense Evidence

In his second issue, appellant contends that the trial court misapplied article 38.371 and admitted evidence of the April 2017 extraneous offense in violation of Rule 404(b). Defense counsel objected to the admissibility of the evidence under Rule 404(b). The State argued the evidence was admissible under article 38.371 and Rule 404(b) "to rebut a defensive theory of fabrication and the fact that identity ha[d] been called into question."

Evidence of a crime, wrong, or other act is not admissible to prove a person's character to show that the person acted in conformity with that character when allegedly committing the charged offense. Tex. R. Evid. 404(b)(1); *Gonzalez*, 541 S.W.3d at 310. Evidence of other offenses, however, may be admissible when the evidence is relevant to a fact of consequence in the case. *Gonzalez*, 541 S.W.3d at 310. Evidence of other crimes or wrongs may be

11

admissible if it tends to establish some elemental fact, such as identity, intent, or knowledge; tends to establish some evidentiary fact, such as motive, opportunity, plan, or preparation, leading inferentially to an elemental fact; or rebuts a defensive theory by showing, e.g., absence of mistake or lack of accident. *Id*.; *see also* Tex. R. Evid. 404(b)(2). If the trial court determines the offered evidence has independent relevance apart from or beyond character conformity, the trial court may admit the evidence and instruct the jury the evidence is limited to the specific purpose the proponent advocated. *Gonzalez*, 541 S.W.3d at 310. Because trial courts are best suited to decide these substantive admissibility questions, we review admissibility rulings for an abuse of discretion. *Id*. We affirm admissibility rulings when they are within the zone of reasonable disagreement. *Id*.

The defensive theory at trial was based on complainant's credibility and the identity of the person who caused her injuries. During opening statement, defense counsel said that the case would "come down to the credibility of the victim . . . and the number and different numbers of stories and versions she has given of all of this. [W]e expect the evidence is going to show that she has made numerous recantations . . . and accused different people." During cross-examination, defense counsel focused on complainant's credibility and her numerous recantations. Defense counsel also tried to establish that complainant's injuries were self-inflicted or caused by others.

We have already held that a trial court can admit evidence of an extraneous offense under article 38.371 on the basis that "the trial court could have concluded that the evidence was admissible to refute [a] defensive theory that [the complainant] fabricated the assault or that no assault occurred." *Id*. at 312. Evidence regarding the nature of the relationship between the actor and complainant also may be relevant to confirm the complainant's initial—and later

12

recanted—statements to police or to explain the complainant's unwillingness to cooperate with law enforcement or prosecution. *Id*.

Evidence regarding the April 2017 assault goes directly to appellant's defensive theory that complainant was not credible and appellant did not assault complainant. *See id*. Even though complainant testified for the prosecution in this case, the trial court reasonably could have concluded that the jury needed to understand the nature of the relationship between complainant and appellant to contextualize why complainant would change her story so many times. Complainant explained during trial that she loved appellant but was afraid he would kill her. Evidence of the April 2017 attack helps to put complainant's actions, recantations, and testimony regarding the charged offense into context.[4]

Admitting evidence of the prior assault, moreover, did not contravene Rule 404(b)'s prohibition against use of character conformity or propensity evidence because the State did not rely on the evidence to convince the jury of appellant's guilt on the basis that appellant was acting "in accordance with [his] character." *See id*. The trial court gave a limiting instruction to the jury that it could only consider the extraneous offense evidence for the limited purposes of identity to rebut a defensive theory and to show the previous and subsequent relationship of appellant and complainant. Tex. R. Evid. 105(a).

We conclude that it is at least within the zone of reasonable disagreement that evidence of the April 2017 offense was admissible for the noncharacter conformity purposes of (1) rebutting appellant's defensive theory that complainant

---

[4] Appellant contends that because the State had already put on evidence of two allegations of domestic violence, there was no need for the State to put on evidence of a third instance. But complainant recanted both the charged offenses before she changed her mind and agreed to testify against appellant. The trial court reasonably could have concluded that the jury needed further context in light of these circumstances.

fabricated her allegations against appellant and her injuries were not caused by him and (2) explaining complainant's recantations. *See Gonzalez*, 541 S.W.3d at 312–13. We overrule appellant's second issue.

### III. Admissibility of Disciplinary Records

In his third issue, appellant challenges the trial court's admission of the disciplinary records attached to the pen pack from appellant's previous conviction, contending it violated his Sixth Amendment right of confrontation. The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the right to be confronted with the witnesses against him. U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that this right applies not only to in court testimony, but also to out of court statements that are testimonial in nature. 541 U.S. 36, 51 (2004).

The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Id*. at 68. Whether a particular out of court statement is testimonial is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). It was the State's burden, as the proponent of the challenged evidence, to establish its admissibility. *Id*. We review the trial court's ruling admitting the evidence under a bifurcated standard, giving deference to the court's findings regarding any pertinent historical facts but reviewing de novo the court's application of the law to those facts. *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006).

The State contends that the disciplinary records qualify as business records containing sterile, routine recitations that are not inadmissible hearsay. Regardless of whether they qualify for admission under the rules of evidence, documents kept in the regular course of business are not admissible under the Confrontation Clause

"if the regularly conducted business activity is the production of evidence for use at trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009); *see also Grey v. State*, 299 S.W.3d 902, 907–08 (Tex. App.—Austin 2009, pet. ref'd). Under *Melendez-Diaz*, a prison disciplinary report made in anticipation of its prosecutorial use would be testimonial even if it contained only sterile, routine recitations of official findings or unambiguous factual matters. *Grey*, 299 S.W.3d at 910.

The State contends that the disciplinary records were made for an administrative purpose, not for use in trial, and thus are not testimonial. Prior to *Melendez-Diaz*, the Court of Criminal Appeals held that boilerplate language that does not contain testimonial statements, narratives of specific events, or written observations is admissible. *Smith v. State*, 297 S.W.3d 260, 276 (Tex. Crim. App. 2009). However, documents that went "beyond a sterile description," including descriptions of a defendant's offenses, contained testimonial statements that were inadmissible under the Confrontation Clause. *Id*. at 277. The State concedes that some of the references to disciplinary violations admitted in this case "appear problematic" under *Smith* because "they seem more descriptive and arguably contain brief narrative accounts." But, according to the State, the disciplinary records are admissible under the Supreme Court's more recent pronouncement in *Melendez-Diaz* because the admitted records were not made in anticipation of prosecutorial use.

We need not decide whether the disciplinary records are admissible under *Melendez-Diaz*. Even if they are not, we need not reverse the trial court's judgment if we conclude beyond a reasonable doubt that the error did not contribute to appellant's punishment. *See id*. Appellant contends that there is no rational basis for us to reach that conclusion because the jury assessed the maximum punishment

allowed by law. We disagree.

The punishment phase of trial was very brief. During her opening statement, the prosecutor asked the jury to "consider everything that you've heard in guilt, as well as the evidence that the State is going to present here in punishment." She also told the jury it could consider the April 2017 assault and appellant's prior convictions in assessing punishment. Although the trial court admitted the pen pack with the disciplinary records, the prosecutor did not discuss its contents at the time of its admission. During closing argument, the prosecutor focused on appellant's prior convictions and the fact that appellant's sentence ended in March 2017. She emphasized that it took appellant 21 days after being released from prison "to celebrate by breaking [complainant's] face." She mentioned the pen pack once, referencing appellant's assault of two other inmates, as discussed in the disciplinary records. But she asked the jury to assess the maximum punishment based on his prior convictions for theft and aggravated robbery. And she closed with, "[P]art of why I am begging you to give him 20 years, is to give [complainant and her daughter] a chance to live their lives [free] of fear from him and what he would do next."

The disciplinary records thus were never emphasized by the State, and the State concentrated its punishment arguments on appellant's 2017 assault of complainant shortly after his release from prison and his prior convictions for theft and aggravated robbery. Given the record before us, we conclude beyond a reasonable doubt that appellant was not harmed by the introduction of the disciplinary records attached to appellant's pen pack. *See id*. We overrule appellant's third issue.

### *Conclusion*

We conclude that on its face, article 38.371 does not violate the Due Process

16

Clauses of the Fifth and Fourteenth Amendments. We further conclude that the trial court did not abuse its discretion in admitting evidence of an extraneous offense, and any error in admitting disciplinary records was harmless under the facts of this case. We affirm the judgment of the trial court.


/s/    Frances Bourliot
Justice


Panel consists of Justices Wise and Bourliot and Visiting Justice Massengale.

Publish — TEX. R. APP. P. 47.2(b).

17